UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL SPIRITFAIR MARTY,

          Appellant,

    v.                                 Case No. 19-cv-1263-pp

MOHELA,
UNITED STATES DEPARTMENT OF EDUCATION,
UNIVERSITY OF NORTHERN IOWA
and UNI PERKINS LOANS,

          Appellees.

**ORDER AFFIRMING DECISION OF THE BANKRUPTCY COURT (DKT. NO. 1) AND DISMISSING CASE**

Michael Spiritfair Marty, representing himself, filed an appeal from the bankruptcy court's judgment granting the University Accounting Service, LLC's and the United States Department of Education's motions for summary judgment in an adversary proceeding. Dkt. No. 1 at 1. In that proceeding, Marty alleged that his student loans subjected him to undue hardship and asked the court to declare his student loan debt to be dischargeable under 11 U.S.C. §523(a)(8). Marty v. MOHELA, _et al._, Case No. 18-2187-kmp (E.D. Wis. Bankr.), R. 1.[1] The bankruptcy court dismissed the appellant's claims against all four defendants, see R. 63 at 1, R. 77 at 20, even though two defendants—University

---

[1] The court has cited to the bankruptcy docket in Case No. 18-2187-kmp by using an "R." for the record cite. Any citation to "Dkt. No." refers to the docket in this case.

1

of Northern Iowa and UNI Perkins Loan—never responded. The bankruptcy court determined that the outcomes of the plaintiff's undue hardship claims in the other defendants' summary judgment motions were dispositive. R. 77 at 20.

## I. Legal Standard

Federal district courts have jurisdiction to hear appeals from bankruptcy court orders under 28 U.S.C. §158(a). "On appeal, the district court reviews the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*." Paloian v. Grup Serla S.A. de C.V., 433 F.R. 19, 25-26 (N.D. Ill. 2010) (citing Monarch Air Serv., Inc. v. Solow (*In re* Midway Airlines, Inc.), 383 F.3d 663, 668 (7th Cir. 2004)).

"Th[e district] court reviews the bankruptcy court's evidentiary rulings for an abuse of discretion." Id. at 46 (citing Alverio v. Sam's Warehouse Club, 253 F.3d 933, 942 (7th Cir. 2001)). The abuse of discretion standard also governs the denial of a motion for a continuance. *In re* McGrath, 451 B.R. 817, 822-23 (N.D. Ill. 2011) (citing Matter of Narowetz Mech. Contractors, Inc., 898 F.2d 1306, 1309 (7th Cir. 1990); Herzog v. Leighton Holdings, Ltd., 239 B.R. 497, 503 (N.D. Ill. 1999)). A bankruptcy court abuses its discretion when its decision is "premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." Id. (citing *In re* UAL Corp., 635 F.3d 312, 319 (7th Cir. 2011)). The district court does not ask how it would have ruled, but asks "whether any reasonable person could agree with the [bankruptcy] court." *In re*

2

<u>Morris</u>, 223 F.3d 548, 554 (7th Cir. 2000) (quoting <u>Deitchman v. E.R. Squibb &</u>
<u>Sons, Inc.</u>, 740 F.2d 556, 563 (7th Cir. 1984)).

## II.    **Background**

### A.    <u>The Bankruptcy Complaint</u>

On August 29, 2018, the plaintiff/debtor, representing himself, filed an adversary complaint in the United States Bankruptcy Court for the Eastern District of Wisconsin. R. 1. The plaintiff sought to discharge his student loans under 11 U.S.C. §523(a)(8). <u>Id.</u> The plaintiff alleged that his student loan creditors were MOHELA [Missouri Higher Education Loan Authority] and University Accounting Service. <u>Id.</u> at ¶9. The plaintiff asserted that the loan debt subjected him to undue hardship. <u>See id.</u> at 3-4.  He argued that he had made good-faith efforts to repay his loans for six years before forbearing payments over the twelve months preceding his complaint. <u>Id.</u> at ¶6. The plaintiff insisted that he "cannot maintain, based on current income and expense, a minimal standard of living if forced to repay the loans." <u>Id.</u> at ¶10. On October 15, 2018, defendant University Accounting Service, LLC (UAS) answered the complaint and raised affirmative defenses. R. 6. The Department of Education did the same four days later. R. 7.

The bankruptcy court held initial pretrial conferences on November 28 and December 12, 2018, during which the parties and the court sought to sort out the proper parties in the case. <u>See</u> R. 77 at 4 (summarizing the effort). The bankruptcy court concluded that "the Department of Education holds notes on the debtor's direct student loans and the University of Northern Iowa holds the

3

notes on the debtor's Perkins loans." Id. On December 12, 2018, the plaintiff filed an amended complaint. R. 12. The amended complaint changed only one paragraph from the original. It added "United States of America, Department of Education" and "University of Northern Iowa, UNI Perkins Loans" as student loan creditors. Id. at ¶9. UAS answered the amended complaint and raised affirmative defenses on December 8, 2018. R. 13.

B.     Summary Judgment Motions

On June 21, 2019, UAS filed a motion to dismiss party or, in the alternative, a motion for summary judgment. R. 36. The Department of Education filed a motion for summary judgment that same day. R. 37, 39.

1.     *University Accounting Service's Motion*

UAS sought to dismissal from the adversary as a misjoined party under Federal Rule of Civil Procedure 21. R. 36 at ¶7. It argued that it was not a real party in interest because the plaintiff did not owe it any debt. Id. at ¶¶8-9. UAS asserted that it was a servicing agent for the Federal Perkins Loans and therefore had no interest in the loans and no authority to litigate the dischargeability of such loans. Id. at ¶¶4-6. Alternatively, UAS argued that it was entitled to summary judgment. Id. at ¶11.

The bankruptcy court granted UAS's motion for summary judgment, R. 63, "because the undisputed facts show that it is not the holder of any of the debtor's loans," R. 77.

4

2. *Department of Education's Motion*

The Department of Education sought summary judgment under Federal Rule of Bankruptcy Procedure 7033 and Fed. R. Civ. P. 56. R. 37, 39. In its brief, the Department of Education argued that the plaintiff's student loans did not impose an undue hardship. R. 38. In support of the motion, the Department of Education filed a statement of facts. R. 40. The plaintiff filed a response to the statement of facts, disputing several. R. 44. The plaintiff did not explain why he disputed the facts he disputed, providing responses such as "Plaintiff disputes this alleged fact." Below, the court recounts the facts as asserted by the Department of Education.

The plaintiff obtained a Bachelor of Arts in liberal studies from Iowa State University in 2007 and a Bachelor of Arts in accounting from the University of Northern Iowa in 2008. R. 40-1 at ¶¶4-5. In 2010, he obtained a Master of Business Administration (M.B.A.), again from the University of Northern Iowa. Id. at ¶6. He borrowed money from the Department of Education to fund his education at both schools. Id. at ¶7.

As of May 7, 2019, the plaintiff had paid $36,237.43 and the balance of his outstanding student loans totaled $28,776.64. Id. at ¶8. Prior to December 2018, the plaintiff was making consistent payments on his student loans. Id. at ¶9. He had been continuously employed since 2011, id. at ¶10, working an average of seventeen hours per week (with increased hours in the winter and decreased hours in the summer) as a janitor for the Lutheran High School Association, id. at ¶11.

5

The plaintiff had also held five other jobs since 2011. Id. at ¶12. From 2016 to 2018, he had had a weekday job as a janitor with Eagle Enterprises. Id. at ¶13. The plaintiff had testified that he quit this job in December 2018 after deciding that "instead of working for the next 11 years at Eagle, [he] was going to try to win this case, and the financial result would be about the same." Id. at ¶14 (quoting R. 40-5 at 6). At the time of the summary judgment briefing, the plaintiff's only "income-producing job" was the weekend janitorial job. Id. at ¶15. He also worked on projects related to Get a JAHB, LLC, a non-profit entity he had founded, but this work did not produce income. Id. at ¶16.

The plaintiff estimated his income to be about $535 biweekly. Id. at ¶17. Before he quit his second job, he had earned $22,522 annually. Id. at ¶18. The plaintiff testified that his monthly expenses and income yielded a $50 monthly deficit and that, if he were to get another paying job, he likely would be able to cover his expenses. Id. at ¶¶19-20. He had $6,435 in savings, which he used to cover deficits in his income and expenses. Id. at ¶¶22-23. He said in his deposition that he was not spending much time seeking additional work, opting instead to put his efforts into winning the case and having his student loan debts discharged. Id. at ¶21.

The plaintiff said he would, if granted a discharge of his student loans, aim to invest in the marketing and operating expenses of his LLC. Id. at ¶26. The plaintiff understood that the Department of Education offered alternative repayment plans, but had not applied for income-dependent repayment plans. Id. at ¶¶24-25. Under the Revised Pay As You Earn plan, offered as an

6

alternative payment structure by the Department of Education, the plaintiff's payments would have been capped at "no more than 10 percent of the amount by which the borrower's AGI exceeds 150 percent of the poverty guideline applicable to the borrower's family size, divided by 12." Id. at ¶27 (quoting R. 40-6 at ¶10; 34 C.F.R. §682.209(c)(2)) (internal quotation marks omitted). Because the plaintiff's income was roughly $14,000, his payment would have been $0 per month under the Revised Pay As You Earn plan. Id. at ¶28. After twenty-five years of paying $0, assuming no changes in income, the balance of the plaintiff's debt would have been forgiven. Id. at ¶29.

In his response to the Department of Education's statement of facts, the plaintiff also added several of his own. R. 44 at ¶¶30-47. Although the plaintiff has supplied citations (assigning them the letter "P" followed by a number), it is unclear to what he was citing. The Department of Education did not respond to the plaintiff's additional facts.

The plaintiff asserted that he was fifty-one years old at the time of the summary judgment briefing. Id. at ¶41. He asserted that since 2007, he had made payments on his Direct Loan student loans totaling $36,237.43, and that since 2011, he had made seventy-five monthly payments of $54 on his Perkins student loans, totaling $4,050. Id. at ¶31. The plaintiff indicated that "in the past," he had cash and assets averaging less than $5,000 and a car worth $1,000. Id. at ¶32. He asserted that as of the summary judgment briefing, he had cash and assets of less than $8,500 and a car worth $3,000. Id. at ¶33. The plaintiff said that he had not been on a date since June 24, 2003, was

7

never married, did not own any houses and slept on a sleeping bag on the floor of his apartment. Id. at ¶¶35-38. He began the "first concrete humanitarian writing project" in 1991 and, since that time, had been working on achieving his initial goals. Id. at ¶¶39-40.

The plaintiff stated that in 1995, he had non-Hodgkin's anaplastic large-cell lymphoma; he asserted that mental health evaluation had revealed his "unsuitability for harmonious placement in the American economy going forward." Id. at ¶30. The plaintiff said that he had a "lifestyle, thought process, history of actions, and general dislike for a large percentage of societal norms that, when taken together, [would] continue to inhibit full integration and assimilation into the large-scale American economic structure in the future." Id. at ¶34. He asserted that he "thinks more, and differently, than the normal person participating in the American economy." Id. at ¶43. He stated that he ascribes to an "unusual system of ethics" and that he was "a little bit slow at keeping up with new technological advances." Id. at ¶¶44-45. The plaintiff contended that his "soft schmoozing and networking skills" were "underdeveloped as is typical for introverted personalities." Id. at ¶46. He indicated that he had a disability and was often perceived to be disabled. Id. at ¶47.

### 3. *Bankruptcy Court Decision*

At a hearing on August 14, 2019, the bankruptcy court reviewed the record and the law and concluded that the plaintiff's student loan debt did not impose an undue hardship under 11 U.S.C. §523(a)(8). R. 77. Applying the

8

Brunner test,[2] which the Seventh Circuit Court of Appeals adopted in *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993), the court found that the plaintiff could satisfy only the first of the three prongs required to demonstrate undue hardship (that the plaintiff's current income was not sufficient to allow him to both cover his expenses and repay the student loans), and noted that the Department of Education had not challenged the plaintiff's ability to satisfy the first prong. Id. at 11.

As to the second prong—that there were "additional circumstances that indicate that the current state of affairs is likely to persist for a significant portion of the student loan repayment period", id. at 11—the bankruptcy court held that the plaintiff's circumstances were "not so exceptional that he [was] facing a certainty of hopelessness that [would] necessarily preclude him from repaying his student loan debts." Id. at 12. The court based this determination on several factors. First, the court found that it was possible, if not probable, that if the plaintiff continued his previous efforts, he could continue paying off his student loans at the current schedule and amounts. Id. In the alternative, the court found that the plaintiff could apply for a more flexible repayment plan, such as an income-based repayment plan, and continue his present standard of living. Id. Both alternatives were possible, because the plaintiff had a long history of successfully making his payments. He also worked only one job, only on weekends. Id. The bankruptcy court determined that the plaintiff was capable of picking up a second job to pay cover any expenses, including

---

[2] Brunner v. N.Y. State Higher Educ. Serv. Corp., 831 F.2d 395 (2d Cir. 1987).

his student loan payments, while maintaining a basic standard of living as he had before. Id. at 13. The fact that he had only one source of income was self-imposed, because he quit his second job. Id. at 12-13. The court noted that at the summary judgment hearing, the plaintiff had admitted that his circumstances hadn't changed since he was hired for the second janitor job three years earlier. Id. at 13.

The bankruptcy court held that "[p]ursuing an adversary proceeding for a determination of undue hardship based on this record is not legally appropriate, and so for these reasons the Department of Education's motion is granted." Id. at 20. It also concluded that although defendants University of Northern Iowa and University of Northern Iowa Perkins Loan had not appeared, its conclusion that repayment of the loans would not constitute an undue hardship prevented it from granting default judgment in favor of the plaintiff as to those defendants. Id.

C.    Appeal

The plaintiff's brief in support of his appeal lists several issues, most of which he raises for the first time on appeal or are not based on the law. These arguments include:

> 1.    Whether the debtor is unable to maintain a minimal standard of living if forced to repay his student loans either with, or without, a second job (*Application of law to the facts*)[.]
> . . .
> 2    Whether the debtor has worked like a slave, voluntary servant, or involuntary servant, for the last eight years (*Application of law to the facts*)[.]
> . . .
> 3.    Whether the debtor has a "likelihood of hopelessness," given the possibility that a "certainty of hopelessness" standard is an

10

unjust standard (cf St. Augustine: Lex iniusta non est lex) (*Application of law to the facts*)[.]

. . .

4.      Whether the debtor reasonably will be unable to pay (if he switches to a DOE income-based student loan repayment plan) the estimated $22,000 student loan forgiveness tax bill after 25 years (*Application of law to the facts*)[.]

. . .

5.      Whether the debtor will be unable to repay his current University of Northern Iowa loan balance of around $3,000 (principal plus interest), which is 60% of the total of his current retirement account savings balance ($5,000), even though a $54 monthly payment will again be required (with no income-based option) if the loan balance is not discharged (*Review of facts*)[.]

. . .

6.      Whether the debtor will be able to prove (based on a preponderance of evidence) a state of undue hardship (Brunner test, 11 U.S.C. § 523(a)(8)) at trial instead of the few selected facts that were used (mentioned) by the Court in its oral ruling on MSJ (*Application of law to the facts*).

Dkt. No. 9 at 3-4.

## III.    **Analysis**

### A.      Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential

element of [its] case with respect to which [it] has the burden of proof." Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the
> affidavits, if any, which it believes demonstrate the absence of a
> genuine issue of material fact.

Id. (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court

must review the record, construing all facts in the light most favorable to the

nonmoving party and drawing all reasonable inferences in that party's favor.

See Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003) (citing Liberty Lobby, 477

U.S. at 255). "However, [the court's] favor toward the nonmoving party does not

extend to drawing inferences that are supported by only speculation or

conjecture." Fitzgerald v. Santoro, 707 F.3d 725, 730 (7th Cir. 2013) (quoting

Harper v. C.R. Eng., Inc., 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to

survive summary judgment, the non-moving party must establish some

genuine issue for trial 'such that a reasonable jury could return a verdict' in

her favor." Fitzgerald, 707 F.3d at 730 (quoting Makowski v. SmithAmundsen

LLC, 662 F.3d 818, 822 (7th Cir. 2011)).

B.    Application

Under 11 U.S.C. §523(a)(8), a bankruptcy court may discharge a debtor's

student loan debt if that debt "would impose an undue hardship on the debtor

or the debtor's dependents." Although §523 does not define "undue hardship,"

12

the Seventh Circuit has adopted the definition from the Second Circuit's 1987 decision in Brunner. See Roberson, 999 F.2d at 1135.

The Brunner test has three prongs:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Roberson, 999 F.2d at 1135 (quoting Brunner, 831 F.2d at 396. The debtor must prove each prong by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991).

The bankruptcy court decided against the plaintiff at prongs two and three. The Department of Education conceded the first prong, briefing only the second and third. See R. 38 at 4.

1. *Prong 2: Certainty of Hopelessness*

The second prong considers "whether additional circumstances exist indicating that [the plaintiff's] state of affairs is likely to persist for a significant portion of the repayment period." Goulet v. Educ. Credit Mgmt. Corp., 284 F.3d 773, 778 (7th Cir. 2002). Under this prong, "the dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." Roberson, 999 F.2d at 1136. The debtor must show "evidence 'of additional, exceptional circumstances strongly suggestive of continuing inability to repay over an extended period of time.'" Goulet, 284 F.3d at 778 (quoting Roberson, 999 F.2d at 1136).

13

At the summary judgment stage, the plaintiff had the burden of coming forward with record evidence that created a genuine dispute of material fact about whether there was a certainty of hopelessness. The plaintiff did not meet that burden in the bankruptcy court and the bankruptcy court did not err in concluding as much. On appeal, the plaintiff asserts that he will not be able to maintain a minimal standard of living if he is forced to continue paying his student loans, regardless of whether or not he gets a second job. Dkt. No. 9 at 18. He admits that in the bankruptcy court, he was asked whether anything had changed since he got his last job and he had responded that it had not; on appeal, he says, "[i]n retrospect, this was incorrect." Id. The plaintiff says that he should have answered that question differently and that he did not because "[h]is brain takes time to work out accurate answers." Id. The fact that the plaintiff now would like to change his answer to the bankruptcy court's questions does not demonstrate error on the bankruptcy court's part, or show that the bankruptcy court committed an error of law or fact.

The plaintiff's appellate brief lists "[a] few" of the "more than a thousand known, and unknown, changes" in his circumstances in the years since his last job, such as root canals, a gum boil, a retinal tear, no phone and his age. Id. at 18-19. But he did not present evidence of these changes to the bankruptcy court, which means that he has waived them. See In re Trentadue, 837 F.3d 743, 747 (7th Cir. 2016) (citing In re Kroner, 9533 F.2d 317, 319 (7th Cir. 1992)).

The plaintiff argues that his "rejection montage" (which he references as "Exhibits 35-70," though the court is hard-pressed to find any documents with those labels)—"affirms the nearly-insurmountable difficulties" he encounters when is tries to get a job. Dkt. No. 9 at 19. The record contains a document titled "Good Faith Effort," which appears to list jobs for which the plaintiff applied in April and May 2019. Dkt. No. 6-2 at 134-35. The list indicates that the plaintiff applied for jobs as a treasury analyst, financial analyst, accounting manager, director of audit, operations analyst, debt advisory specialist, vice president of finance—highly skilled jobs likely requiring specific skill sets. The list does not indicate that the plaintiff applied for any unskilled positions, such as janitorial work, cleaning or grounds maintenance. The bankruptcy court noted that janitorial and data entry positions were not the plaintiff's "preferred career choices," but explained that under the case law, the fact that the plaintiff could not get his preferred job did not constitute undue hardship. R. 77 at 17. The court was correct. The Seventh Circuit has held that "it is not uncommon for individuals to take jobs not to their liking in order to pay off their student loans, or for that matter to meet all sorts of other financial obligations." *In re* O'Hearn, 339 F.3d 559, 566 (7th Cir. 2003). The appellate court stated that "Congress has not provided that" considerations such as whether a debtor has found a position he deems satisfying or socially useful "ought to be weighed in determining the discharge of student loans." Id.

Nor did the plaintiff carry his burden of showing that he had attempted to change his payment plan with the Department of Education. As the

15

Department of Education has shown, that would have reduced his payment to $0 each month. In his appellate brief, the plaintiff asserts that income repayment plans can result in significant tax bills once the loan is discharged twenty-five years out. Dkt. No. 9 at 37. The possibility of tax consequences twenty-five years in the future is too speculative to constitute an undue hardship. See In re Echelbarger, 600 B.R. 39, 50-51 (Bankr. S.D. Ind. 2019) ("While there may be tax consequences for Debtor upon discharge, a potential tax liability at the end of the repayment period is too speculative to constitute an undue hardship.").

With respect to the plaintiff's Perkins loans, the plaintiff argues "there is no readily-available income-based Perkins repayment option." Dkt. No. 9 at 46. Whether this is true or not, the plaintiff pays only $54 per month on his Perkins loans. R. 44 at ¶31. He stated in his deposition that his monthly deficit was only $50. R. 40 at ¶19. Though it appears the plaintiff may have attempted to correct this statement to $50 per week, see R. 77 at 16, the plaintiff could make his Perkins loan payments at $50 or $200 per month if he obtained a second job paying even minimum wage. He did not prove to the bankruptcy court by a preponderance of the evidence that he had tried in good faith to obtain such a job.

The plaintiff asserts that the "'certainty of hopelessness' standard is an unjust standard." Dkt. No. 9 at 9. The plaintiff is entitled to that opinion and is not alone in holding it. But in the American legal system, lower courts are bound by decisions of higher courts unless they are "powerfully convinced"

16

that the higher court would overrule those decisions "at the first opportunity." Colby v. J.C. Penny Co., Inc., 811 F.2d 1119, 1123 (7th Cir. 1987) (citing Olson v. Paine, Webber, Jackson & Curtis, 806 F.2d 731 (7th Cir. 1986)). The Seventh Circuit has applied the Brunner test since 1993. Roberson, 999 F.2d at 1136. There is no indication that the Seventh Circuit has any plans to jettison that test, and both the bankruptcy court and this court are required to adhere to Seventh Circuit precedent.

The plaintiff lists twelve "specific, material facts and applications of law in genuine dispute" with respect to the certainty of hopelessness:

> (1) whether the Debtor has made payments on his student loan debt when he had to the resources to do so, (2) whether the Debtor did not have a preplanned financial management strategy aimed at avoiding repayment, (3) whether there is no Perkins Loans' income-driven repayment plan available, (4) whether the Debtor earns a healthy salary, buys new cars, and has any sports' training expenses, (5) whether a "greater than 50%" preponderance of proof standard correlates with a (100%?) "certainty of hopelessness" in current Brunner case law (in the 7th Circuit), (6) whether a "certainty of hopelessness" standard, is a just, or an unjust, interpretation of legislative intent, (7) whether the Debtor's expertise on topics like death, suicide, and mass murder relate to his own condition of a "certainty of hopelessness," (8) whether the Debtor's recent work experience, and his difficulty with references, hinder his future employment in a field that would be stable enough to help him rise out of his current financial condition, (9) whether the Debtor's 18-month extension of working at Eagle (over his original intention) is relevant, (10) whether the fact of the Debtor having to clean an entire Eagle building (taking 100 large, heavy garbage bags to the dumpster instead of 50) twice (seven and two days before quitting), instead of normally having to clean half of the building is relevant, (11) whether the Debtor has been trying to maximize his income over the last 10 years, and (12) whether the Debtor's 3rd-percentile net worth relates to the Payback Period on his student loans' investment.

Dkt. No. 9 at 35-36.

The court has addressed several of these facts and neither those nor the others listed constitute genuine disputes as to issues of material fact. For some of these facts, the plaintiff did not meet his burden to prove them to the bankruptcy court by a preponderance of the evidence. Others challenge precedent that this court does not have the power to overrule. Still others the plaintiff raises for the first time on appeal. The court does not doubt that the plaintiff worked hard at the job he quit and that it was difficult, or that he has difficulty interviewing and obtaining the kinds of jobs that suit his intelligence and education. But under the Brunner test and Seventh Circuit case law, those facts do not support a finding of undue hardship.

This court's role is confined to determining whether the bankruptcy court committed error in concluding that the plaintiff had failed to demonstrate a genuine dispute as to an issue of material fact regarding whether he had shown a certainty of hopelessness that he could pay back his loans under nearly any circumstances. The bankruptcy court did not err in that conclusion.

2.    *Prong Three: Good Faith Effort to Repay*

The third prong considers whether the debtor has made a good faith effort to repay his loans. This fact is measured by the debtor's "efforts to obtain employment, maximize income, and minimize expenses." Roberson, 999 F.2d at 1136.

Although the plaintiff has significantly minimized his expenses—he does not own a house and sleeps in a sleeping bag on the floor of his apartment—he works only weekends and has presented no evidence indicating that he cannot

Case 2:19-cv-01263-PP   Filed 11/21/22   Page 18 of 22   Document 17

obtain a second job. Just prior to filing the adversary complaint, the plaintiff quit his second job, at least partially motivated by a desire to focus his efforts on the lawsuit to have his loans discharged rather than pay them off. See R. 40 at ¶14. "[U]ndue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from 'factors beyond his reasonable control.'" Roberson, 999 F.2d at 1136 (citing Comm'n on the Bankruptcy Laws of the United States, Report, H.R. Doc. No. 137, 93d Cong., 1st Sess., Pt. II, at 140 n.16 (1973)). The plaintiff had a weekday job working in janitorial services as recently as 2018, which he voluntarily left. R. 40 at ¶¶13-14. He did not meet his burden of demonstrating to the bankruptcy court by a preponderance of the evidence that he could not obtain another such job.

The plaintiff told the bankruptcy court that nothing had changed since he was hired at his second job in 2016 performing janitorial services for Eagle Enterprises. Dkt. No. 9 at 18. As the court has noted, he now asserts that there have been "1000+" changes in his circumstances over this time. These changes include, among other things: "three root canals, "[o]ne gum boil resulting in weeks of screaming pain," "[a] slight retinal tear from January 2019 (no doctor verification, which, without surgery, limits vision for white-collar work," "[n]o phone, which is required to get hired, and which the Debtor cannot afford (and which he did have three years ago)," and "[t]he debtor was in his 40s and now is in his 50s." Id. at 19. It is unclear how any of these events or ailments impede his ability to perform work such as the janitorial work he does on the

19

weekend. The plaintiff maintained his position as a janitor for the Lutheran High School Association since 2011, R. 40 at ¶10-11, even with these purported events and ailments.

In his appellate brief, the plaintiff provides additional facts about why he quit his job at Eagle Enterprises. These include the end of the bus route he took to work, the terrible commute, conflicts with his boss and poor performance in his job, among other things. See Dkt. No. 9 at 30. Again, he does not appear to have presented these facts to the bankruptcy court, which means the court could not have erred in failing to consider them. And these facts do not explain why he has not tried to obtain a new job in janitorial services or some other field (even if it is a field that he does not find attractive).

The plaintiff has not demonstrated that the bankruptcy court erred in concluding that he had not identified a genuine dispute as to a material issue of fact relating to his realistic efforts to obtain employment and maximize his income. The plaintiff asserts that he "worked like a slave, voluntary servant, or involuntary servant, for the last eight years." Dkt. No. 9 at 3. The plaintiff brings this claim for the first time on appeal, and thus has waived it. Even if he hadn't, the Supreme Court has held that the "Thirteenth Amendment prohibition of involuntary servitude" relates to servitude "enforced by the use or threatened use of physical or legal coercion." United States v. Kozminski, 487 U.S. 931, 944 (1988). The plaintiff has not alleged or proven that the defendants used or threatened the use of physical force against him, or that they legally coerced him into working for Eagle. The plaintiff voluntarily

20

borrowed money from the defendants to attend college (twice) and to attend graduate school.

The plaintiff claims that requiring him to "continue in such a state of undue hardship" would violate his rights under the Ninth Amendment. Dkt. No. 9 at 8. The Ninth Amendment, which states that "[t]he enumeration in the Constitution of certain rights shall not be construed to deny or disparate others retained by the people," "is a rule of interpretation rather than a source of rights." Froehlich v. State, Dep't of Corrections, 196 F.3d 800, 801 (7th Cir. 1999) (citations omitted). The plaintiff has no Ninth Amendment claim (even if he had tried to raise one in the bankruptcy court). He also claims that failure to discharge his student loan debt violates his Fourteenth Amendment rights. Dkt. No. 9 at 8. The plaintiff has not developed this argument; he does not explain how failure to discharge student loan debt would violate his due process rights. "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." Crespo v. Colvin, 824 F.3d 667, 674 (7th Cir. 2016) (quoting United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991)).

The plaintiff has not demonstrated any error on the part of the bankruptcy court. He has not identified clearly erroneous factual conclusions (particularly since he did not give the bankruptcy court the opportunity to consider facts he has raised on appeal). He has not demonstrated any error of law on the bankruptcy court's part. The plaintiff's arguments come down to the

21

fact that he believes that the <u>Brunner</u> "certainty of hopelessness" test is unfair. That is an issue he must take up with the Seventh Circuit.

## IV. Conclusion

The court **AFFIRMS** the decision of the bankruptcy court and **DISMISSES** this appeal. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 21st day of November, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

22